In the Matter of LUIGI DI GIOVANNI, Petitioner, against JAMES E. ALLEN, JR., as Commissioner of Education of the State of New York, et al., Respondents.— This is a proceeding under article 78 of the Civil Practice Act to review a determination of the Commissioner of Education revoking petitioner's license to practice pharmacy. Petitioner was charged with having committed a crime within the meaning and purview of section 6804 (subd. 1, par. b) of the Education Law. In the Court of Special Sessions, City of New York, he pleaded guilty to an information charging him with selling barbiturate drugs without a prescription in violation of sections 6814 and 6823 of the Education Law, and was sentenced to six months in the workhouse, the execution of which was suspended. A violation of the sections cited would be a misdemeanor under section 1744 of the Penal Law. A hearing was held before a subcommittee of the State Board of Pharmacy which made findings of fact and recommended that petitioner's license be revoked. The findings of the subcommittee, and its recommendation, were unanimously adopted by the State Board of Pharmacy, and later confirmed by the report of the Regents Committee on Discipline. The Board of Regents voted for revocation and the order of the Commissioner of Education was entered thereon. In answering the charge petitioner did not deny that he had been convicted before the Court of Special Sessions upon his plea of guilty to the misdemeanor charge in the information, but there was proof of such conviction before the subcommittee and in this record the fact of such a conviction is not disputed. Petitioner raises two defenses: (1) that revocation would constitute a cruel and unusual punishment within the meaning of both the Federal and State Constitutions because of the lapse of time between his criminal conviction and the institution of the administrative proceeding against him; and, (2) that the penalty imposed was so severe as to amount to an abuse of discretion under the circumstances. We find no merit to petitioner's defense that his constitutional rights were impaired. The circumstances surrounding his conviction are briefly as follows. At the time, November 2, 1956, he was employed by one Harris who owned a drug store in New York City. On the occasion in question he sold a drug known as seconal to a woman who identified herself as a Miss or Mrs. Gallagher. She produced no prescription but said that the owner of the store, Harris, had one for her. Petitioner testified that he called Harris on the telephone and the latter told him that he had a prescription and would bring it in the following day, whereupon petitioner sold capsules of the drug to the

woman. Harris never produced the prescription and it subsequently developed that the purchaser was a detective attached to the narcotic squad of the New York City Police Department. Thereafter both Harris and petitioner were separately arrested and charged with the same offense. Harris elected to stand trial and after conviction took an appeal to the Appellate Division, First Department where his conviction was unanimously affirmed without opinion (*People* v. *Harris*, 6 A D 2d 679). Thereafter permission to appeal to the Court of Appeals was denied by the Chief Judge of that court. The respondents here, so the record indicates, account for the delay in the proceeding to revoke petitioner's license on the basis there was a question of law in the *Harris* case, the ultimate decision of which might affect petitioner's case. On the argument in connection with this review petitioner concedes that the defense of laches and estoppel may not be asserted against a governmental agency, but he nevertheless urges that the delay of 16 months following his conviction and before revocation proceedings were instituted constitutes cruel and unusual punishment. In support of this argument he alleges, among other things, that he purchased a drug store prior to the institution of this proceeding for the sum of $8,000 and borrowed a sum in excess of $20,000 to remodel and stock it. The record however indicates that he purchased this store in April of 1957, some two months after his arrest and before his plea of guilty in the Court of Special Sessions. We doubt whether this matter is relevant in support of the defense of cruel and unusual punishment, but in any event it seems clear that petitioner took his chances when he made the purchase in view of the charge pending against him. As to the punitive action imposed, and in addition to the undisputed fact that petitioner committed a misdemeanor, it appears that petitioner's license to practice pharmacy was revoked for the period 1948 to 1952 for a charge resulting from his conviction of a misdemeanor in connection with the handling of stolen merchandise, and for which he served three months in a county jail. His license was restored on June 16, 1952. In September, 1956 petitioner was subjected to a fine of $150 imposed by the Board of Pharmacy for sales he made involving unlabeled and misbranded prescription drugs. Thus he had a previous record of violations when the present offense was considered by the Board of Regents. We cannot justly say that under such circumstances the revocation of his license was an abuse of discretion. Determination unanimously confirmed, without costs. Present — Foster, P. J., Coon, Gibson, Herlihy and Reynolds, JJ.